STATE OF MISSISSIPPI EX REL. ZACHARY T. DOOLITTLE *v.* JOHN
H. HAYS.

[45 South., 728.]

MUNICIPAL OFFICERS. *Election of disqualified person. Vacancies. Special elections.* Code 1906, §§ 3435, 3436.

 Where a disqualified person is elected to a municipal office the previous encumbent will hold over until the next general election, under Code 1906, § 3435, fixing the terms of municipal officers at "two years and until their successors are duly elected and qualified," and there is no vacancy to be filled under Code 1906, § 3436, providing for filling vacancies in municipal offices.

FROM the circuit court of Newton county.

HON. JAMES R. BYRD, Judge.

The state, on the relation of Doolittle, appellant, was plaintiff in the court below; Hays, appellee, was defendant there. The suit was a *quo warranto* proceeding. From a judgment in defendant's favor plaintiff appealed to the supreme court.

The facts are fully stated in the opinion of the court.

*Jesse D. Jones, May, Flowers & Whitfield, and R. V. Fletcher,* attorney-general, for appellant.

The single question here presented is, whether, when a municipal officer is holding over after the expiration of his regular term, there is a vacancy which may be filled by a special election. This question was decided by the circuit judge against the appellant, his judgment reciting that " while the relator was thus holding over after the expiration of his regular term, there was such a vancacy as could be filled by the mayor and board of aldermen by a special election.

Code 1906, § 3456, provides that the terms of office of all officers, not otherwise provided for by law, shall be four years and until their successors shall be duly qualified. The terms of most officers are fixed by this general provision. Code 1906, § 3435, provides that a general municipal election shall be held in every city, town and village of the state on the second Tuesday in December, 1906, and every two years thereafter, for the election of all municipal officers to be elected by the people; and that the officer elected shall qualify and enter upon the discharge of his duties on the first Monday of January after such general election, and shall hold his office for two years and until his successor is duly elected and qualified. Appellant was elected to office under the provisions of acts of 1900, ch. 79, sec. 4, which is the same as Code 1906, § 3436, providing that " when it shall happen that there is any vacancy in a city, town, or village elective office, the unexpired term of which shall not exceed six months, the same shall be filled by appointment by the mayor and board of aldermen of said city, town or village," etc., " and if the unexpired term shall exceed six months, the mayor and aldermen . . . shall make an order in writing, directed to the three election commissioners appointed as provided in § 3437 of this chapter, . . . commanding an election to be held on the day to be fixed, in order to fill the vacancy."

Doolittle, the relator, was elected to the same term to which

Hancock, the former marshal, had been elected; and, of course, his term from that date forward was to be precisely the same as Hancock's would have been if the latter had not resigned. The relator was entitled to hold the remainder of the regular term and on until his successor should be legally elected and qualified. If his successor had been elected at the regular election on the second Tuesday in December, 1906, and had qualified, Doolittle's term would have expired on the first Monday of January, 1907. But the person for whom votes were cast in the regular election on the second Tuesday in December, 1906, was not a qualified elector, and hence there was really no election. 23 Am. & Eng. Ency. Law (2d ed.), 348 *et seq.*

The mayor and board of aldermen of a municipality cannot hold a special election unless there is a vacancy in the office to fill which the election is ordered. We have only two kinds of elections, general and special. The general election is fixed by law, and is held on a fixed date. The spcial election cannot be held except for the purpose of filling a vancacy, and before it can be authorized the vacancy must exist. The only question, then, in the case at bar, is whether there was a vacancy at the time the election was held in April, 1907, by virtue of which the appellee claims to be marshal.

"As a general rule there is a vacancy in an office whenever there is no incumbent to discharge the duties of the office, that is, whenever the office is empty or unfilled; but as long as there is any one authorized to discharge the duties of the office, the office is not to be deemed vacant so as to authorize the exercise of the power to fill vacancies in the office." 23 Am. & Eng. Ency. Law (2d ed.), 348. "But where the incumbent of the office holds over after the expiration of his expired term until the qualification of his successor, there does not exist, upon the expiration of his express term, a vacancy in the office so as to authorize the exercise of a power to fill vacancies in such office." *Ib.,* 349.

" As there is no vacancy in an office where the incumbent is holding over beyond the usual time under a constitutional or statutory provision authorizing him to do so, in the absence of a provision creating a vacancy in such case, it follows that in such case the office cannot be filled by election or appointment under an authority so to fill a vacancy occurring therein. But it would seem that where the law expressly or impliedly creates a vacancy in an office at the expiration of the regular term, the office may be filled by election or appointment under an authority so to fill a vacancy therein, although the incumbent is authorized to hold over." 23 Am. & Eng. Ency. Law (2d ed.), 416. To the same effect, see *State ex rel.* v. *Harrison,* 113 Ind., 234; 3 Am. St. Rep., 663; *State ex rel.* v. *Howe,* 25 Ohio St., 558; 18 Am. Rep., 321; *State ex rel.* v. *Henderson,* 4 Wyo., 536; *Ash* v. *McVey,* 85 Md., 119.

Our statute law recognizes the existence of the above general rule that there is no vacancy where a legally elected incumbent is holding over. The provision in Code 1906, § 3436 which does not appear in acts of 1900, ch. 79, sec. 4), viz., that " if an officer elected shall fail to qualify, and election to fill the vacancy so created shall be held in like manner," is a recognition of the general rule. Such provision would have been unnecessary if, without it, there is such a vacancy as can be filled by appointment at the expiration of a regular term for which the officer is elected and while he is holding over. This provision in Code 1906, § 3436, was really inserted because of the language of Code 1906, § 3459, this latter code section providing that if a person elected to any office shall fail to qualify as provided by law, on or before the commencement of his term of office, a vacancy in such office shall occur thereby, and it shall be filled in the manner prescribed by law for filling vacancies in such office, unless the failure to qualify arises from there being no officer to approve the bond of such officer elect.

The general rule is that there is no vacancy if one who was

legally elected to office legally holds over. Under our statute law, an officer who holds over after the expiration of his term is not so filling the office as that there is no vacancy therein to be filled.

This court held, in *Roane* v. *Matthews,* 75 Miss., 94; s.c., 21 South., 665, that the marshal of a town, who was entitled to hold over could oust by *quo warranto* one whose induction into office was illegal because he was not a qualified elector at the time of his election. The old incumbent was one Tunstall. Matthews was attempting to hold the office by virtue of an election. This court said, " Tunstall had the right to hold over, as marshal of Holly Springs, until a legal successor had been duly qualified."

Appellee relies upon two Mississippi decisions, *Sublett* v. *Bedwell,* 47 Miss., 266, and *Hoskins* v. *Brantley,* 57 Miss., 814. In the *Sublett case* the concluding sentence, found on page 277 of the opinion, is dictum of the purest ray serene. The question whether the inability of the person receiving the highest number of votes at an election, to qualify, thereby created a vacancy in the office, was not directly nor remotely before the court for decision. Other questions of moment were before the court relative to the constitutionality of an act conferring certain powers upon justices of the peace to hear and determine election contests, and relative to the functions of a jury in such cases, and to the question of whether, in the case then on appeal, the candidate who received the majority vote was disqualified. There was no discussion in the briefs of counsel as to whether there was a vacancy. The sentence in the opinion, upon which the appellee relies, was thrown in manifestly without reflection or consideration, and merely to round out a period. It has no value, and is not binding upon this court. The cast of *Hoskins* v. *Brantley,* 57 Miss., 814, blindly follows the *Sublett case,* and is another illustration of the court's speaking on a question not before it for decision. It was the case of an ineligible majority can-

didate seeking to oust an officer seeking to hold over. The court properly held that the ineligible candidate could not displace the officer so holding over. And here the opinion should have stopped. But the learned justice, with his eyes on the dictum of *Sublett* v. *Bedwell,* volunteered the further advice that a new election should be ordered.

As authorities upholding the contention of the appellant, see *Kimberlin* v. *State,* 130 Ind., 120; 14 L. R. A., 858; *Commonwealth* v. *Hanley,* 9 Pa. St., 513.

*Foy & Banks,* for appellee.

That an elective office is deemed vacant for the purpose of calling a special election for filling a vacancy therein where the old incumbent is " holding over until his successor is elected and qualified,"- is settled in the case of *Hoskins* v. *Brantley,* 57 Miss., 814.

Code 1906, §§ 3436, 3459, clearly give authority for the calling of the special election in this case.

An office is a public trust in which all of the people are more interested than the officer or trustee. The foundation of our system of government reposes upon the ultimate sovereignty of the people. Votes cast by qualified electors are legal votes, although given to one who is ineligible to hold the office; the votes being ineffective to confer the office simply because the candidate has not the capacity for the office. In such case there has been a failure to fill the office, and the term of the office is vacant *de jure,* but not necessarily *de facto.* *Sublett* v. *Bedwell,* 47 Miss., 266.

Chancellor KENT defines *de facto* officers as those acting under color of office not strictly legal, or without having qualified themselves by the requisite test, or by holding over after the period prescribed for the new appointment or election. Their acts, in respect to the public and to third persons who have an interest in them, are held valid merely to prevent a failure of justice. 2 Kent Comm., 339.

The primary object of the provision that the incumbent is entitled to hold the office until " his successor is elected and qualified " is simply to prevent, on grounds of public necessity, a vacancy *de facto,* in the term of the office until the term can be filled by the regularly electing or appointing of a qualified person to hold the same. The right of the officer thus to hold over is rather by sufferance than from any inherent title to the office. *State* v. *Coke,* 54 Tex., 483.

The holding over after the expiration of the regular term is not the beginning of a new term, but is the continuation of the old term. 23 Am. & Eng. Ency. Law (2d ed.), 416. There is a distinction between the rights to a term of office and the right to enter upon the duties of an office. *State* v. *Coke, supra.*

Under the authority given to the relator by Code 1906, § 3435, to hold over until his successor should be duly elected and qualified, the continuation of the old term of office under which he was holding was, by the judgment of the trial court, made vacant *de jure,* and the mayor and board of aldermen had the right to call the special election to fill the vacancy thereby existing. Under the holding-over clause of our Constitution and statutes, an officer, in holding over, is acting under the extension of the former term of office, or at sufferance, and is only performing the duties of a *de facto* officer. And accordingly he is holding no term of office, within the meaning of the law, and if the slightest break or interruption occurs in his tenure while he is thus acting, a vacancy results, *de jure.* *People* v. *Rogers,* 118 Cal., 393.

Where the law expressly or impliedly creates a vacancy in an office at the expiration of a regular term, the office may be filled by an election or appointment under authority so to fill a vacancy therein, although the present incumbent is authorized to hold over. *People* v. *Randall,* 151 N. Y., 497; 23 Am. & Eng. Ency. Law (2d ed.), 416.

A person duly elected to an office is the incumbent of the

office from the time of the commencement of the regular term thereof for which he was elected until the expiration thereof, whether he qualified or not. *People* v. *Taylor,* 57 Cal., 620. An office is terminated *proprio vigore* by resignation, expiration and removal by competent authority. *Johnson* v. *Church,* 77 Va., 265.

Argued orally by *J. N. Flowers,* for appellant, and by *M. P. Foy* and *G. H. Banks,* for appellee.

MAYES, J., delivered the opinion of the court.

In April, 1905, L. B. Hancock was marshal of the town of Newton, and resigned. When he resigned, an election was held to fill the vacancy, and Z. T. Doolittle was elected. Under section 3435, Code 1906, the next general election was fixed for the second Tuesday in December, 1906, and every two years thereafter. At the December election, 1906, J. H. Hays was a candidate for the office and received a majority of the votes; but at the time of the election Hays was not eligible to hold the office, in that he was disqualified. Because of the disqualification of Hays, Doolittle held over and continued to perform the duties of the office until some time in April, 1907, when the mayor and board of aldermen declared the office vacant and ordered a special election for the purpose of filling same. At this special election Hays, being the only candidate, again received a majority of the votes cast and was declared elected. At the time this special election was ordered Doolittle was the incumbent of the office and was discharging its duties, claiming to be legally entitled thereto by reason of the fact that at the time fixed by law for the holding of an election for the purpose of electing his successor no person was elected, and, this being the case, he had the right to hold over until the next regular election. Doolittle was forcibly ousted by Hays after the special election, and brings this *quo warranto* for the purpose of regaining the office.

The sole question presented by this record is whether or not the election of a successor having failed at the December election, 1906, and Doolittle having continued to hold over, there was a vacancy, within the meaning of the law, so as to authorize the mayor and board of aldermen to order an election for the purpose of filling it.    Section 3435 of the Code of 1906 provides that: " A general municipal election shall be held in each city, town and village on the second Tuesday in December, A. D. 1906, and every two years thereafter for the election of all municipal officers to be elected by the people.    The officers elect shall qualify and enter upon the discharge of their duties on the first Monday of January after such general election, and shall hold their offices for two years and until their successors are duly elected and qualified."    Section 3375 of the code provides that: " The officers of every municipality shall be a mayor, aldermen, a marshal, a tax collector, a treasurer, a clerk, and a street commissioner," etc.    By this section the marshal is made an officer of the municipality, and he is to be elected with the other officers on the second Tuesday in December, 1906, and every two years thereafter.    Section 3436 of the Code of 1906 provides that: " When it shall happen that there is any vaccancy in any city, town or village elective office the unexpired term of which shall not exceed six months, the same shall be filled by appointment by the mayor and board of aldermen of such city," etc., " and if the unexpired term shall exceed six months, the mayor and aldermen," etc., " shall make an order in writing, directed to the three election commissioners appointed as provided in section 3437 of this chapter," etc., " commanding an election to be held on the day to be fixed in order to fill the vacancy," etc.    If there was a vacancy which was required to be filled within the meaning of the law, the unexpired term of the marshal in this case exceeding six months, it was proper that the mayor and board of aldermen should order the election.    It is further provided in section 3436 that: " If an officer elect shall fail to qualify, an election to

fill the vacancy so created shall be held in like manner." These
are practically all the provisions of the code which have any
relation to the subject under discussion. The office in question
is a statutory one, and involves no clause of the Constitution.

A reading of these statutes makes it manifest that the only
time in which a general election could be held was in Decem-
ber, 1906, and, this time having passed, there cannot now
be another general election until the second Tuesday in Decem-
ber, 1908. If any other election can be held, it must be held
under some other provision of the statute authorizing the
holding of a special election, and this can only be done where
there is a vacancy. This brings us to the consideration of the
question of whether or not there was a vacancy which would
authorize the mayor and board of aldermen to order an election.
Whether there was or was not a vacancy cannot be settled by
the mere declaration of the mayor and board of aldermen that
there was. There must, in fact, exist a vacancy. Because
there was a failure on the part of the electorate at the December
election, 1906, to elect a party eligible to hold the office, can
Doolittle hold over until the next regular election, or can the
mayor and board of aldermen declare a vacancy and authorize
the holding of a special election to fill it? The cases mainly
relied on by counsel for appellee as warrant for the action of
the mayor and board of aldermen in declaring that a vacancy
existed and proceeding to fill it by special election are the cases
of *Sublett* v. *Bedwell*, 47 Miss., 266; 12 Am. Rep., 388, and
*Hoskins* v. *Brantley*, 57 Miss., 814. A close analysis of these
cases shows that they are without application to this feature of
the case, though the case of *Hoskins* v. *Brantley* seems to be in
point. The question of whether or not there was a vacancy
in the office to be filled by special election or appointment was
not a question in either case to be determined by the court. In
the *Sublett case*, 47 Miss., 266; 12 Am. Rep., 388, there was
no contention that either party had a right to hold over by
reason of the failure of a successor to be duly elected and quali-

fied. It was a contested election case. Sublett and Bedwell were rival candidates for chancery clerk. Bedwell received a majority of the votes cast and claimed the election. Sublett's contention was that Bedwell was ineligible to the office, and that all votes cast for him were illegal, and that for that reason, though Bedwell received the largest number of votes, still the result was to elect him (Sublett) because the votes cast for Bedwell were illegal. But the court held that there was no one elected under these conditions. But there was no question of the right of either party to hold over involved in this case. In the case of *Hoskins* v. *Brantley,* 57 Miss., 814, Baker claimed to have been elected to the office of sheriff of Holmes county, and brought *quo warranto* proceedings against Hoskins, who was holding over as former sheriff, for the purpose of turning him out. The question in that case was as to the eligibility of Baker to the office; it being alleged that Baker was liable for public money unaccounted for, and therefore ineligible under the Constitution to fill any office of profit or trust under the state government. The eligibility of Baker was the sole question before the court. The court determined that he was disqualified, and then, *ex gratia,* threw out the suggestion that Hoskins, the incumbent, should hold over until the board of supervisors could order an election, thereby adjudicating that which was not before the court for decision, and was not litigated, namely, that there was a vacancy warranting the holding of a special election. The case of *Sublett* v. *Bedwell,* 47 Miss., 266; 12 Am. Rep., 388, is cited as authority for the court's suggestion in the *Hoskins case,* and is the only authority cited, but does not support it, and the suggestion there made is at war with both reason and authority. What the court said in the *Hoskins case* is the purest dictum, and we cannot follow that part of it as authority in this case.

Whether there is in fact a vacancy in office is not settled by the declaration of the authority vested with the power of filling it. It is a question always open to judicial interpretation.

*State* v. *Harrison,* 113 Ind., 434; 16 N. E., 384; 3 Am. St. Rep., 666; *Commonwealth* v. *Meeser,* 44 Pa., 341; *Dullam* v. *Willson,* 53 Mich., 392; 19 N. W., 112; 51 Am. Rep., 120. In the case of *State* v. *Harrison,* 113 Ind., 434; 16 N. E., 384; 3 Am. St. Rep., 666, it is said: " The word ' vacancy,' as applied to an office, has no technical meaning. An office is not vacant so long as it is supplied in the manner provided by the Constitution or law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and, conversely, it is vacant in the eye of the law whenever it is unoccupied by a legally qualified incumbent, who has a lawful right to continue therein until the happening of some future event." This case cites many authorities. In the case of *Tappan* v. *Gray,* 9 Paige (N. Y.), 507, it was held that an office is not vacant while any person is authorized to act in it. In the case of *State* v. *McMullen,* 46 Ind., 307, where the auditor of a county, who was authorized by statute to fill vacancies in the office of township trustee, determined that a vacancy existed in that office by reason of the failure to elect a successor at the general election, and appointed a successor, at the time the incumbent was holding over under the hold-over clause of the statute, and the court held that there was no vacancy. To the same effect is the case of *People* v. *Bissell,* 49 Cal., 407. The dictum of the court in the *Hoskins case* assumes that to be true which is the very point controverted here, namely, that there was a vacancy. McCrary on Elections, 216; Throop on Public Officers, 330, 331; Ency. of Law, vol. 23 (2d ed.), p. 348 (2). Again on page 416 of vol. 23 (2d ed.) Ency. of Law, it is said: " As there is no vacancy in an office where the incumbent is holding over beyond the usual time under a constitutional or statutory provision authorizing him to do so, it follows that the office cannot be filled by election or appointment under an authority so to fill a vacancy occurring therein." In the case of *Kimberlin* v. *State,* 130 Ind., 120; 29 N. E., 773; 14 L. R. A., 858; 30 Am. St. Rep., 208, 212, it

is said: " The weight of authority is that, where there exists
a constitutional provision such as we are now considering, a
term of office fixed by statute runs, not only from the period
fixed, but for an additional period fixed between the date fixed
for its termination and the date at which a successor shall be
qualified to take the office. The period between the expiration
of the term fixed by statute and the time at which a successor
shall be qualified to take the office is as much a part of the
incumbent's term as the fixed statutory period. It follows
from what we have said that the appellee is entitled to the
office in dispute unless the appellant has been legally chosen
and qualified as his successor. As the election of the township
trustee at that time was wholly unauthorized by law, such
election was void, and conferred no right to the office; nor did
the board of commissioners possess the legal authority to ap-
point the appellant to the office, for the reason, as we have seen,
that there was no vacancy, and, there being no vacancy, the
appellee's successor could be chosen only by the constituency
which elected him."

Applying these authorities to the state of facts presented
in this record, we say that the effect of voting for a person
at the December election not qualified to hold the office was just
the same as if there had been no election. This being the case,
there was no officer-elect who could qualify, and by virtue
of the terms of the statute itself, this being the case, Doolittle
held over until the next general election. Being lawfully the
incumbent of the office under the statute, there was no vacancy
to be filled, and the act of the mayor and board of aldermen
in ordering an election to fill the supposed vacancy was without
authority under the law and a nullity. In the case of *Taylor
v. Sullivan,* 45 Minn., 309; 47 N. W., 802; 11 L. R. A., 272;
22 Am. St. Rep., 729, it is held that: " An incumbent of an
office, who is entitled to hold for a fixed period and until his
successor is elected and qualified, is entitled to hold over in
the event of the election of an ineligible successor, and has such

interest in the election as that he may question its legality by *quo warranto.*" In this opinion it is further stated that: " The relator was elected to the office at the election in 1888, qualified, and entered upon the discharge of his duties. He is still the incumbent of the office, unless he has been superseded by the respondent, or unless a vacancy has occurred by force of the statute. The term of office for which the relator was elected was two years and until his successor is elected and qualified. If the election of the respondent was not legally authorized, the relator would continue to hold the office by force of this express provision of the statute." The court held in the case *supra* that the party elected as his successor was ineligible, and that therefore the relator continued to hold the office by virtue of the statute itself. To the same effect is the case of *State ex rel. Carson* v. *Harrison,* 113 Ind., 434; 16 N. E., 384; 3 Am. St. Rep., 663. Where a person is elected or appointed to fill a vacancy in an office, and for the unexpired term only, he has the same right to hold over that his predecessor had, in whose place he stands. There cannot be said to be any vacancy in this office, nor can there be said to be any " officer-elect " who fails to qualify within the meaning of section 3436 of the Code of 1906. There can be no vacancy, for the reason that there never has been elected any one eligible to fill the office, and therefore, by the terms of the statute, the incumbent holds over. There cannot be said to be any " officer-elect," because an " officer-elect " necessarily implies a person eligible to hold the office, and the record shows that at the general election, when Mr. Hays received a majority of the votes, he was disqualified from holding the office and ineligible, and therefore never was an " officer-elect," and under the law could not qualify. His failure to do so did not result from any act of his; but because of an inhibition in the law itself. In the case of *Foster* v. *Scarff,* 15 Ohio, 532, it is said: ".The term ' election ' implies a choice by an electoral body, at the time and substantially in the manner and with the

safeguards provided by law, of a qualified person to an office."
The case of *State* v. *Boyd,* 31 Neb., 682; 48 N. W., 754;
51 N. W., 602, was a *quo warranto* filed by John M. Thayer,
Governor of Nebraska, and claiming to be entitled to hold over
by reason of the fact that James E. Boyd, the candidate re-
ceiving the majority vote, was ineligible, and the court said:
" It is insisted by counsel for the respondent that Thayer's
term of office expired when Boyd was elected and qualified.
The proposition assumes the question in dispute: Was Boyd
duly elected? The inquiry is, not whether he received a
plurality of the votes, but did he have the qualifications to be
elected? We have already given a negative answer to this.
' Elected,' as used in the Constitution, means the choosing of
a person eligible to be chosen." And the court held that the
incumbent Governor had the right to hold the office for another
term, because the candidate receiving the highest number of
votes was ineligible to the office and could not qualify; the
right to hold over being conferred on the incumbent under the
hold-over clause of the Constitution. The Constitution, in the
*Boyd case, supra,* provided that the Governor should hold his
office for two years " and until his successor is elected and
qualified." *State* v. *Boyd,* 31 Neb., 682; 48 N. W., 753; 51
N. W., 602. This clause is almost in the language of the
statute of this state. Under the provisions of the Nebraska
Constitution it was also provided that, on failure of the Gov-
ernor-elect to qualify, the duties of the office should devolve on
the Lieutenant Governor, and one of the contentions was that,
because of the failure of Boyd to qualify, he having received
a majority of the votes and being ineligible, Thayer's term of
office expired under this section of the Constitution, and the
Lieutenant Governor took charge; but the court held that:
" By failure to qualify is meant failure to give the bond and
take the oath of office required by the Constitution. It was
intended to apply to a case where a person possessing the con-
stitutional qualifications to hold the office has been elected, but

does not qualify. It cannot be said that there has been a failure to qualify when no person has been elected. When there is no person elected, the Governor holds over." In the case of *In re Corliss,* 11 R. I., 643; 23 Am. Rep., 538, it is held that: "Before a person can decline an office, he must be elected; and no person can be elected who is ineligible, or, in other words, incapable of being elected." Again, in the same authority, on page 644 of 11 R. I. (23 Am. Rep., 538), it is said: "Where electors vote for an ineligible candidate, their votes are not to be counted any more than if they were thrown for a dead men." In short, because Hays was ineligible to the office at the time the votes were cast for him, the result was the same as if there had been no election, and Doolittle was entitled to hold over until the next regular election.

Section 3459 of the Code of 1906 can have no application to this case, for the reason that it applies to the case of a person elected to any office and failing to qualify as required by law. That section is as follows: "If any person elected to any office shall fail to qualify as required by law, on or before the day of the commencement of his term of office, a vacancy in such office shall occur thereby, and it shall be filled in the manner prescribed by law for filling vacancies in such office, unless the failure to qualify arise from their being no officer to approve the bond of such officer-elect, and except the Governor-elect, when the legislature fixes by resolution the time of his installation." In order for a person to be elected, he must be capable of qualifying; and if he be ineligible, and receive a majority of the votes cast, he is not elected and the result of the election is a nullity. If the legislature had intended this section to apply to this state of case, it would have been easy for it to have said so. If the legislature had said in this section, "If any person elected to any office shall fail to qualify as required by law," and had added, "or if for any reason any person voted for at an election and receiving a majority of the votes cast be ineligible to the office and cannot

qualify," etc., it would then have covered this case; but it is not the function of the court to make the law, but to construe it as written.

The authority given by the statute to an officer to hold over until a successor is duly elected and qualified is just as much a right in the incumbent as is that part of the statute which fixes the definite period. The statute is in harmony with the Constitution of the state, and merely carries out a principle declared by the Constitution itself. Thus, in section 136 of the Constitution of the state, it is provided that: "All officers named in this article shall hold offices during the term for which they were selected, unless removed, and until their successors shall be duly qualified to enter on the discharge of their respective duties." This section, of course, only applies to constitutional officers, as was held in the case of *Andrews* v. *Covington,* 69 Miss., 740; 13 South., 853; but it serves to illustrate what is the policy of the state. The office we consider in this case is a statutory office, and the legislature had the right to limit the tenure of the occupant in any way it saw fit, not violative of any constitutional provision of the state. The effect of that provision of the statute which provides that the officers of the municipality shall hold office for two years and until their successors are duly elected and qualified is to add an additional contingent term to the original fixed term. This contingent term for which the officer may be allowed to serve, and which is a right in him at the time he qualifies and assumes the duties of his office, may be defeated by the electorate electing, at the time fixed by law, an eligible successor to the office; but, if they fail to do so, there is no vacancy in the office, which can be filled by appointment or by special election, if the incumbent of the office continues to hold over. When the electorate fail to elect a successor, the statute, *ex vi termini,* steps in and elects the incumbent for another term.

The mayor and board of aldermen had no authority for calling a special election. It was the duty of the electorate to

elect a successor to Doolittle at the general election in 1906, and, having failed to do this, under the law Doolittle continued to hold over. The mayor and board of aldermen are only empowered to appoint a marshal in some cases, and call an election in others named by the statute, when there is a vacancy. There was no vacancy, and the act of the mayor and board of aldermen in calling a special election was a nullity. No election can be held except as provided by law, and there was no provision in the law in this particular case for the calling of the special election. *State ex rel. McHenry* v. *Jenkins,* 43 Mo., 265; *State* v. *Robinson,* 1 Kan., 17. These statutes were enacted for the purpose of preventing the confusion in the public service which might result from a failure to elect a person to fill same. If the election fail, and the incumbent continue to hold over, there is no vacancy; and the incumbent will hold over until the next general election, at which time they may choose a successor.

Without the controlling provisions of the statute of this state, we would be inclined to give authority, if possible, to the public expression favoring the respondent in this case. The case of appellant is barren of all but technical legal claim; but the law of the case is undoubtedly with him, and under the law he must prevail.

*Reversed and remanded.*

CALHOON, J., dissented.